# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 793 | **DATE** | 1/27/2004 |
| **CASE TITLE** | Engel Machinery, Inc. Vs. Wells Fargo Equipment | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants Wells Fargo's motion as to Counts 1 and 3. The case is set for a status hearing on 2/4/04 at 9:30 a.m. for the purpose of setting a trial date. Trial counsel are directed to appear.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 29 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 38 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | OR | courtroom deputy's initials | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

| | |
|---|---|
| ENGEL MACHINERY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 793 |
| ) | |
| WELLS FARGO EQUIPMENT ) | |
| FINANCE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Engel Machinery Inc. has sued Wells Fargo Equipment Finance, Inc. for breach of contract. Engel claims it is the third-party beneficiary of an equipment financing agreement between Wells Fargo and Style Master, Inc. under which Wells Fargo agreed to finance Style Master's purchase of five injection molding machines from Engel. Engel delivered three of the machines to Style Master, which filed for bankruptcy, and it claims Wells Fargo owes it payment for those units.

Wells Fargo has moved for summary judgment, arguing that no enforceable contract exists and that even if a contract exists, Engel is not entitled to recover because it did meet the contract conditions for obtaining financing. Engel responds that an enforceable contract exists between it and Wells Fargo, and that even if the contract were not properly executed, the doctrine of promissory estoppel requires Wells Fargo to pay Engel for the delivered machines. For the reasons stated below, the Court grants Wells Fargo's motion for summary judgment on Count 2

1

38

but denies it on Counts 1 and 3.

## Facts

In the summer of 2001, Style Master negotiated with Engel to acquire five injection molding machines with Wells Fargo to finance the acquisition. On September 18, 2001, Wells Fargo provided Style Master with a "lease purchase proposal" in which Wells Fargo set forth the terms of its proposed financing arrangement. The proposal contemplated that Wells Fargo would purchase three 1250 ton and two 800 ton machines and would lease them to Style Master pursuant to specified terms. Later in September, Wells Fargo submitted to Style Master a proposed "master lease" and related documents. These included an "agreement of sale" pursuant to which title to the machines would pass to Style Master after it paid off the lease in full, and "pay proceeds" letters directing Wells Fargo to disburse payment to Engel. Engel signed the master lease, but there is no evidence that Wells Fargo ever signed it.

In addition, Engel and Wells Fargo negotiated a "remarketing agreement" under which Engel agreed to attempt to resell or re-lease the machines if Style Master defaulted on its payment obligations to Wells Fargo, and two agreements (referred to by the parties as "holdback agreements") which entitled Wells Fargo to hold back a portion of the purchase price as security for Style Master's performance during the first twelve months of the lease. The remarketing agreement recited that Wells Fargo "has entered into or has agreed to enter into" a master lease with Style Master "pursuant to which [Wells Fargo] will finance the acquisition" of the machines. The holdback agreements stated that to induce Wells Fargo to finance the equipment, Engel agreed that a payment consisting of 90% of the total purchase price would be due from Wells Fargo on commencement of the lease, in return for transfer of title to Wells Fargo, and that

a contingent payment of the remaining 10% would be due twelve months later so long as Style Master had made the required payments under the master lease. This amounted to a "holdback" of part of the purchase price as a form of security for Style Master's satisfaction of its obligations to Wells Fargo under the proposed lease. The remarketing and holdback agreements were both signed by Engel and Wells Fargo, though Wells Fargo disputes whether the person who purportedly signed on its behalf had the authority to do so.

On December 7, 2001, Wells Fargo provided Engel with two signed letters advising that Wells Fargo "has provided commitment[s]" to Style Master for $1,794,890.40 (for three 1250 ton machines) and $890,168.00 (for two 800 ton machines), and stating that Wells Fargo's disbursement of funds to Engel was subject to the terms and conditions of Wells Fargo's commitment to Style Master, and was also subject to the delivery and installation of the machines and their acceptance by Style Master. The letters stated that the commitments would expire on December 26 and December 28, 2001, respectively.

Two 750 ton machines (not 800 ton machines) were delivered by Engel to Style Master on December 14 and 17, respectively. It is not clear exactly when the installation took place; however, the machines were not accepted by Style Master until January 14 and 31, 2002. A single 1250 ton machine was delivered by Engel to Style Master on December 21, 2001; it was installed and accepted by Style Master on February 4, 2002. The other two 1250 ton machines were never delivered. There is no evidence that Engel or Style Master obtained a written extension of Wells Fargo's financing commitments, which as set forth in its December 7, 2001 letters required the installation and acceptance of three 1250 ton machines by December 26 and two 800 ton machines by December 28.

3

In mid-January 2002, Wells Fargo advised that it would not pay for any of the machines. Wells Fargo's in-house counsel sent Engel's outside counsel a letter on February 4, 2002 stating that the commitment had expired before the machines had been installed and that Wells Fargo had no obligation to pay for them. In March 2002, Style Master petitioned for relief under Chapter 11 of the Bankruptcy Code.

Engel commenced this action against Wells Fargo in February 2003. Its complaint contains three claims. Count 1 is a claim for breach of the remarketing and holdback agreements, which Engel alleges amounted to a promise by Wells Fargo to Engel to finance the purchase of the machines. Count 2 is a claim for breach of the purported master lease between Wells Fargo and Style Master, of which Engel claims to be a third part beneficiary. Count 3 is a claim of promissory estoppel. Wells Fargo has moved for summary judgment on all three claims.

## Analysis

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must look at the evidence "as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The Court's "function is not to weigh the evidence but merely to determine if 'there is a genuine issue for trial.'" *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002) (citation omitted).

4

When, as in this case, "jurisdiction is based on diversity of citizenship, the substantive rights of the parties are governed by state law." *Help at Home, Inc. v. Medical Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Wells Fargo initially argued that it was entitled to summary judgment on Count 2, Engel's claim for breach of the master lease, on the grounds that the agreement had not been signed by Wells Fargo and thus was unenforceable under the Illinois Credit Agreements Act ("ICAA"). *See* Def.'s Mot. at 4 ("Thus, this statute precludes Engel from asserting any claims based on agreements between Wells Fargo and Style Master, to which Engel was not a party, i.e., Engel's third party beneficiary claim in Count II of the Complaint."). Though Wells Fargo's memorandum and its reply memorandum later attempted to conflate Counts 1 and 2, the ICAA argument does not apply to Count 1 for the reasons discussed later. We will therefore begin our analysis with Count 2.

1. **Count 2 (claim based on master lease)**

The master lease was supposed to be signed by both Wells Fargo and Style Master but evidently did not end up being signed by Wells Fargo. Wells Fargo says that the master lease is a "credit agreement" within the meaning of the ICAA, *see* 815 ILCS 160/1(1), and thus is not enforceable against Wells Fargo, the purported creditor, because it did not sign. *See id.* 160/2. Engel responds that the ICAA does not apply because the master lease contained a choice of law provision electing Minnesota law. But that is circular reasoning; it assumes the lease is enforceable against Wells Fargo in the first place. Before we can enforce any of the lease's terms, including the choice of law provision, we must determine whether the lease is enforceable against Engel. Illinois enforces a choice of law agreement only if it is contained in a valid

5

contract. *See Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996).

Before deciding whether the agreement is valid, we must determine which state's law governs that question. In federal cases, a federal court generally applies the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Illinois courts apply the "most significant relationship" test for deciding among conflicting laws. *Esser v. McIntyre*, 169 Ill. 2d 292, 298, 661 N.E.2d 1138, 1141 (1996). The Court need not, however, address the various factors included in that test. Because neither party has argued that Illinois' choice of law rules (as opposed to the choice of law provision in the contract that is of disputed validity) require application of the substantive law of another state, the Court properly evaluates the contract's validity under Illinois law. *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995).

The ICAA bars an action on, or in any way related to, a credit agreement unless it is in writing and signed both by the debtor and the creditor. 815 ILCS 160/2. Engel is a debtor under the ICAA; the statute defines "debtor" as "a person who obtains credit or seeks a credit agreement or *claims the existence of a credit agreement with a creditor* or who owes money to a creditor." *Id.* 160/1(2). As Engel claims that the master lease amounts to an agreement by Wells Fargo to extend credit for the purchase of the machines from Engel, the ICAA bars its enforcement absent Wells Fargo's signature. *Help at Home*, 260 F.3d at 755 (ICAA "requires the signature of both parties; the signature of only one party renders the agreement unenforceable").

The parties spend most of their effort addressing whether under the ICAA, the credit agreement itself must be signed or whether, as is the case with Illinois' general statute of frauds,

6

the creditor's signature on a related writing can suffice. This question has not been answered by the Illinois courts, and the Seventh Circuit sidestepped it in *Help at Home*, finding the documents that the creditor had signed in that case insufficiently related to the credit agreement even under the statute of frauds' broader test. *See id.* at 756-57. But the parties have, for the most part, wasted their breath on this point. Even were it enforceable against Wells Fargo, the master lease does Engel no good in this case. The lease does not impose any obligation on Wells Fargo to pay anyone anything; rather it provides the terms for Style Master to pay Wells Fargo. That does not assist Engel on a claim that Wells Fargo should be required to pay Engel for the machines that it delivered to Style Master. Thus the Court need not address the knotty ICAA issue posed by the parties; Wells Fargo is entitled to summary judgment on Count 2 because the master lease, even if enforceable under the ICAA, does not entitle Engel to payment from Wells Fargo.

2. **Count 1 (claim based on "holdback agreement" and remarketing agreement)**

Count 1 is a different matter. That claim is based on two separate documents, the so-called "holdback agreements" and the remarketing agreement. The latter agreement does not do any more for Engel than did the master lease; it imposes no obligation on Wells Fargo to pay Engel or anyone else, but rather addresses what happens if Style Master defaults on its obligations under the master lease.

The somewhat inappropriately-named "holdback agreements," however, squarely impose upon Wells Fargo an obligation to pay for the machines. There are two such agreements, one for each group of machines. Each states that an amount, equal to 90% of the total purchase price, will be due from Wells Fargo on commencement of the lease in return for transfer of title to Wells Fargo, and that the remaining 10% will be due from Wells Fargo twelve months later as

7

long as Style Master has made the payments required under the lease. Each is signed by a representative of Wells Fargo; though Wells Fargo disputes this person's authority to sign, there is evidence from which a fact finder reasonably could find that apparent authority existed. The ICAA thus does not bar enforcement of these agreements. The other point argued by Wells Fargo, an unexplained change in the name of the Engel entity identified in the agreements, does not entitle it to summary judgment: there is a genuine issue as to whether the entity named in the agreements is a different legal entity from the plaintiff in this case.

For these reasons, Wells Fargo is not entitled to summary judgment on Count 1.

### 3. Count 3 (promissory estoppel)

Wells Fargo's summary judgment motion on Count 3 is premised on the proposition that a claim of promissory estoppel cannot be used to evade the requirements of the ICAA. Because the Court has determined that the ICAA does not bar enforcement of at least one of the alleged agreements relied upon by Engel, summary judgment on this basis would be inappropriate as to Count 3.

### Conclusion

For the reasons stated above, the Court grants Wells Fargo's motion for summary judgment as to Count 2 but denies the motion as to Counts 1 and 3. The case is set for a status hearing on February 4, 2004 at 9:30 a.m. for the purpose of setting a trial date. Trial counsel are directed to appear.

MATTHEW F. KENNELLY
United States District Judge

Date: January 27, 2004