Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 793 | DATE | 11/29/2004 |
| CASE TITLE | Engel Machinery, Inc. vs. Wells Fargo Equipment | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants Wells Fargo's motion for summary judgment (49-1). The Clerk is directed to enter judgment in favor of the defendant. The ruling date of 12/1/04 is vacated.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 30 2004 date docketed | 58 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | OR | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ENGEL MACHINERY, INC., )
)
Plaintiff, )
)
vs. ) Case No. 03 C 793
)
WELLS FARGO EQUIPMENT )
FINANCE, INC., )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2001, Style Master, Inc. wanted to acquire five injection molding machines from Engel Machinery, Inc., and to do so it negotiated a lease financing arrangement with Wells Fargo Equipment Finance, Inc. and Engel. The parties contemplated that Wells Fargo would purchase the machines and then lease them to Style Master, with Style Master acquiring the machines at the conclusion of the lease term. The documentation for the transaction included the following:

- "pay proceeds" letters directing Wells Fargo to disburse payment to Engel;

- "holdback agreements" under which Engel agreed to transfer title to Wells Fargo in return for 90% of the purchase price on commencement of the lease, with the other 10% to be paid one year later if Style Master made the required lease payments;

- the lease;

- an agreement of sale under which title to the machines would pass to Style Master



once it paid the lease in full; and

- a "remarketing agreement" obligating Engel to attempt to resell or re-lease the machines if Style Master defaulted on the lease.

On December 7, 2001, Wells Fargo provided Engel with two signed letters stating that it had provided commitments to Style Master for the purchase price of the machines, and that Wells Fargo's disbursement of funds to Engel was subject to the terms of Wells Fargo's commitment to Engel and to the delivery, installation, and acceptance of the machines. The letters stated that the commitments would expire on December 26 and 28, 2001.

The machines were delivered by Engel to Style Master before the expiration dates, but the installation took some time, and the machines were not accepted until mid to late January 2002. Engel maintains that it was led to believe by Wells Fargo that the delay would not affect things. But in mid-January 2002, Wells Fargo said it would not pay for the machines, and it later advised that it had no obligation to do so because its commitment had expired before the machines had been installed. In March 2002, Style Master filed for bankruptcy, leaving Engel high and dry.

Engel has sued Wells Fargo. Count 1 is a claim for breach of the holdback agreements. Count 3 is a claim of promissory estoppel. Count 2 is a claim for breach of the lease, of which Engel claimed to be a beneficiary. As the Court noted in an earlier ruling granting Wells Fargo summary judgment on Count 2, that was a rather odd claim for Engel to make against Wells Fargo, as the lease imposed payment obligations not on Wells Fargo, but on Style Master. But Engel's other claims survived the summary judgment motion, which was premised on Wells Fargo's contention that it had never signed the holdback agreement, as Engel was able to turn up signed versions of the agreements.

## Discussion

Wells Fargo has now renewed its motion for summary judgment on the remaining claims. Wells Fargo argues that it never became obligated under the holdback agreements because they took effect only "upon commencement of the Lease," which Wells Fargo says it never signed. Wells Fargo says that under the Illinois Credit Agreements Act, the lease could not legally take effect until signed. The ICAA bars an action on or related to a credit agreement unless the agreement is in writing, expresses an agreement to extend credit, sets forth the relevant terms and conditions, and is signed by both the debtor and the creditor. 815 ILCS 160/2. The Act defines a credit agreement as an agreement to lend money or extend credit, with certain exceptions not applicable here. 815 ILCS 160/1(1).

Engel argues that the holdback agreements' use of the term "commencement" is ambiguous and that the lease commenced even if it was not signed. Engel also argues that the ICAA does not apply to the holdback agreements.

Under the holdback agreements, Wells Fargo was to become obligated to make payment to Engel for the machines "upon commencement of the Lease." The Court does not agree with Engel's contention that this term is ambiguous. Though the holdback agreements did not define "commencement," a contractual term is not rendered ambiguous by the absence of a glossary. The question is whether the term is reasonably susceptible of having more than one meaning. *See, e.g., Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.*, 212 F.3d 373, 377 n.1 (7th Cir. 2000) (Illinois law). It is not. "Commencement," in accordance with its common meaning, as well as the context of the holdback agreements, denotes the start of the lease, that is, the date on which it took effect.

The real question is whether the lease took effect only upon signature by Wells Fargo. As a matter of fact, this might be subject to debate: Engel has evidence suggesting that it was told to go ahead and deliver the machines to Style Master. But as a matter of law, the question is not subject to debate. Because the holdback agreements (which contained Wells Fargo's promise to pay Engel) did not include an extension of credit, one might wonder how they could be subject to the ICAA. But the holdback agreements cannot properly be viewed in isolation; they are part of a larger transaction that involved the extension of credit. Even if the particular promise on which the plaintiff is suing is not itself a credit agreement, if it is part of a transaction that does constitute an extension of credit, it is subject to the ICAA. *See, e.g., Bank One, Springfield v. Roscetti,* 309 Ill. App. 3d 1048, 1058, 723 N.E.2d 755, 762-63 (1999).

The holdback agreements by themselves did not satisfy the requirement of section 2 of the ICAA that the signed agreement set forth the relevant terms and conditions of the credit transaction; the terms of the lease were also integral to the transaction. Because the lease was part of a credit transaction covered by the ICAA, under that statute it was effective only upon the signature of both Style Master and Wells Fargo. Thus until the lease was signed by Wells Fargo, it did not commence, and Wells Fargo's payment obligation under the holdback agreements did not take effect.

Engel's remaining argument is that it is genuinely disputed whether Wells Fargo signed the lease. But as the party claiming a breach of contract, Engel bears the burden of proving that a binding contract existed. *See, e.g., Bercoon, Weiner, Glick & Brook v. Manufacturers Hanover Trust Co.,* 818 F. Supp. 1152, 1155 (N.D. Ill. 1993) (Illinois law); *see also, e.g., Valenti v. Qualex, Inc.,* 970 F.2d 363, 366 (7th Cir. 1992) (Illinois law; party claiming breach must prove

4

contract existed). Thus Engel must provide evidence from which a fact finder reasonably could determine that Wells Fargo signed the lease. Engel has failed to do so. The best it can do is to try to poke holes in Wells Fargo's denial. *See* Engel Mem. at 1; Engel LR 56.1 Resp. ¶ 8. That is insufficient. "A plaintiff cannot win just by putting the defendant on the stand and asking the jury to disbelieve him." *J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1025 (7th Cir. 1999). *See also, e.g., Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984) (discredited testimony generally not a basis to draw contrary conclusion).

Finally, Engel's promissory estoppel claim is barred by the ICAA just as its breach of contract claim is barred. *See Help at Home*, 260 F.3d at 755.

For these reasons, Wells Fargo is entitled to summary judgment. Though the result may be harsh, "Illinois courts have emphasized repeatedly that the ICAA is a broad statute that will be applied the way it was written, even though the results of that application may at times seem harsh." *Id.* That said, it should be noted that commercial parties negotiating credit agreements involving Illinois debtors are on fair notice of the ICAA's existence and thus must take care to protect themselves against its sometimes harsh effects.

## Conclusion

For the reasons stated above, the Court grants Wells Fargo's motion for summary judgment [docket # 49-1]. The Clerk is directed to enter judgment in favor of the defendant. The ruling date of December 1, 2004 is vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 29, 2004